UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------x
                                                :
PATRICK GUILLAUME,                              :
                                                :
                          Petitioner            :   11 Civ. 8819 (TPG)
                                                :
        – against –                             :   **OPINION**
                                                :
WAYNE MULLER Office of Detention and            :
Removal for U.S. Immigration and                :
Customs Enforcement; WILLIAM JOYCE,             :
Assistant Field Office Director,                :
Office of Detention and Removal for U.S.        :
Immigration and Customs Enforcement;            :
CHRISOPHER SHANAHAN, New York                   :
Field Office Director for the Office of         :
Detention and Removal for U.S.                  :
Immigration and Customs Enforcement;            :
SHAUN GOLDEN, Sheriff of Monmouth               :
County Correctional Facility; Janet             :
NAPOLITANO, Secretary of Homeland               :
Security; ERIC HOLDER, Attorney                 :
General of the United States;                   :
and the U.S. DEPARTMENT OF                      :
HOMELAND SECURITY,                              :
                          Respondents.          :
------------------------------------------------x

   This is a petition for a writ of habeas corpus pursuant to 28 U.S.C. §

2241. Petitioner Patrick Guillaume argues that his detention by the Bureau of

Immigration and Customs Enforcement ("BICE") violates § 236(c) of the

Immigration and Nationality Act ("INA"), 8 U.S.C. 1226(c), and the United

States Constitution.

   The petition is denied.

**Background**

In 2003, Guillaume, a Haitian citizen, entered the United States as a lawful permanent resident to join his father, who is now a naturalized citizen. Since that time, Guillaume has been convicted of several crimes, including petit larceny, theft of services, criminal possession of a forged instrument, attempted grand larceny, and criminal possession of a weapon. He was last released from incarceration in 2008, a fact which is relevant to the application of § 236, as will be explained below.

On January 12, 2010, Guillaume was sentenced in state court to three years' probation for criminal possession of a weapon in the fourth degree. While visiting the Kings County Probation Office on September 21, 2011, Guillaume was apprehended by BICE agents, who had previously identified Guillaume as deportable because of his criminal convictions.

On the same day, BICE commenced removal proceedings by serving Guillaume with a Notice to Appear. BICE officials also determined that Guillaume's removal charges subjected him to mandatory pre-removal detention under § 236(c). Guillaume is now detained at the Monmouth County Correctional Facility in Freehold, New Jersey.[1]

In his petition, Guillaume claims that he has been wrongfully subjected to mandatory pre-removal detention. Guillaume also claims that the administrative procedures that exist to challenge his mandatory-detention

---

[1] Although Guillaume has spent the majority of his detention in the Monmouth facility, he filed the instant petition in this federal judicial district while in custody at the Varick Street Immigration Court. Despite petitioner's subsequent return to the Monmouth facility, the court retains jurisdiction to hear the petition. See Rumsfeld v. Padilla, 542 U.S. 426, 441 (2004).

classification violate the Due Process Clause of the Fifth Amendment. He seeks immediate release or a hearing before an Immigration Judge to determine if he should be released on bond.

## Discussion

I)   Jurisdiction

Certain features of the statutory scheme at issue call into question the court's jurisdiction over this case. Namely, § 236(e) of the INA, 8 U.S.C. § 1226(e), provides that no "court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole."

However, the Supreme Court held in Demore v. Kim, 538 U.S. 510, 516-517 (2003), that § 236(e) does not foreclose constitutional challenges to § 236(c) on habeas review. District courts have since read Demore to permit habeas petitions predicated on the statutory interpretation, rather than the constitutionality, of § 236(c). See, e.g., Louisaire v. Muller, 758 F.Supp. 2d 229, 234 (S.D.N.Y. 2010). Accordingly, Section 1226(e) does not bar the court from hearing Guillaume's petition.

Nor does the doctrine of exhaustion bar Guillaume's petition. Since no statutory exhaustion requirement applies in this case, the court may apply the doctrine of exhaustion at its discretion. See Beharry v. Ashcroft, 329 F.3d 51, 56-57 (2d Cir. 2003). It can decline to do so when exhaustion would be futile. See Garcia v. Shanahan, 615 F.Supp. 2d 175, 180 (S.D.N.Y. 2009). Here, petitioner's classification follows from a Board of Immigration Appeals ("BIA")

decision, Matter of Rojas, 23 I. & N. Dec. 117 (BIA 2001), that petitioner claims was erroneously decided. It would obviously be futile to force petitioner to assert claims before an Immigration Judge bound by that very decision. Thus the court will assume jurisdiction over Guillaume's petition.

 II)  Section 236(c) of the INA

 It is appropriate at this point to review the overall statutory framework concerning the detention of aliens pending removal.

 Section 236(a) provides that on a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Pending such decision, the Attorney General may continue to detain the arrested alien. The Attorney General may also release the alien on a bond containing prescribed conditions, or instead of such of such release, the Attorney General may allow conditional parole.  As the language of this provision clearly indicates, the Attorney General has broad discretion under § 236(a) with regard to the detention of an alien potentially subject to removal. It should be noted that, although this provision does not specifically provide for a hearing with respect to release on a bond, such hearings are frequently requested and granted.

 Section 236(a) is subject to the exception created by what is provided § 236(c). Section 236(c) deals with the "Detention of criminal aliens." It provides in § 236(c)(1), under the heading "Custody," that the Attorney General "shall take into custody" any alien who falls within any of four categories, (A) through (D).

Category (A) encompasses aliens who are inadmissible by reason of having committed offenses covered by 8 U.S.C. § 1182(a)(2), which deals with crimes involving moral turpitude, trafficking in controlled substances, prostitution and commercialized vice, trafficking in persons, and money laundering.

Category (B) encompasses aliens who are deportable by reason of having committed offenses covered by certain portions of 8 U.S.C. § 1227(a)(2). These portions concern the commission of multiple crimes involving moral turpitude, aggravated felonies, crimes involving a controlled substance, certain firearms offenses, offenses relating to espionage and sabotage, and treason and sedition.

Category (C) encompasses aliens who have been sentenced to terms of imprisonment of at least one year for crimes that renders them deportable under another portion of 8 U.S.C. § 1227(a)(2), which concerns crimes involving moral turpitude.

Category (D) encompasses aliens who are inadmissible under 8 U.S.C. § 1182(a)(3)(B), because the Attorney General or the Secretary of Homeland Security has grounds to believe that they create a danger of terrorist activity. It encompasses aliens who are deportable under 8 U.S.C. § 1227(a)(4)(B) for the same reason.

To recapitulate, under Section 236(c)(1), the Attorney General "shall take into custody" any alien who falls within any of the above categories. The statute goes on to state that he shall do so "when the alien is released," without regard to whether the release involves parole, supervised release, or probation.

This statute proceeds with a subsection (c)(2), under the heading "Release." This subsection provides that the Attorney General "may release an alien described in paragraph 1" only if the Attorney General determines that such release is necessary to provide protection to a witness, a potential witness, a person cooperating with a major criminal investigation, or for similar reasons.

Since Guillaume's petition concerns certain specific language in § 236(c), the provision should be quoted in full:

> (c) Detention of criminal aliens
>
> (1) Custody
>
> The Attorney General shall take into custody any alien who—
>
>> (A) is inadmissible by reason of having committed any offense covered in section 1182 (a)(2) of this title,
>>
>> (B) is deportable by reason of having committed any offense covered in section 1227 (a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title,
>>
>> (C) is deportable under section 1227 (a)(2)(A)(i) of this title on the basis of an offense for which the alien has been sentence [sic] to a term of imprisonment of at least 1 year, or
>>
>> (D) is inadmissible under section 1182 (a)(3)(B) of this title or deportable under section 1227 (a)(4)(B) of this title,
>
> when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.

>   (2) Release
>
>   The Attorney General may release an alien described in paragraph (1) only if the Attorney General decides pursuant to section 3521 of title 18 that release of the alien from custody is necessary to provide protection to a witness, a potential witness, a person cooperating with an investigation into major criminal activity, or an immediate family member or close associate of a witness, potential witness, or person cooperating with such an investigation, and the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding. A decision relating to such release shall take place in accordance with a procedure that considers the severity of the offense committed by the alien.

8. U.S.C. § 1226(c).

In the present case, petitioner does not dispute that he is included within one or more of the categories listed above dealing with deportation. However, he contends that the Attorney General failed to comply with the requirement that he "shall take into custody" any such alien "when the alien is released." Petitioner argues that the Attorney General was required by this language, as it applies to him, to take him into custody *at the time he was released from imprisonment* for a crime falling within one or more of the aforementioned categories.

It is surely true that the Attorney General did not take petitioner into custody at the time of his release from his last imprisonment. There was a delay of about two years before the Attorney General acted. Thus, if the law requires the Attorney General to act immediately, or virtually immediately, upon the release from imprisonment, then the Attorney General did not comply with the statute. If he did not comply with the statute, it would appear that his

taking of petitioner into custody was not authorized by § 236(c)(1). Of course, the Attorney General would still have authority to detain petitioner under (a), but as described above, this provision does not impose mandatory pre-removal detention in the way § 236(c) does.

As will be described in further detail below, this court holds that § 236(c) should not be interpreted to require that a criminal alien be immediately taken into immigration custody following release from criminal custody for an offense falling within one of the aforementioned categories. It is the view of the court that the overriding intent of Congress was to require that aliens taken into criminal custody for certain offenses, obviously deemed most serious by Congress, should be subjected to mandatory pre-removal detention upon apprehension by BICE.

The argument that the phrase "when the alien is released" means at the very time of release or immediately upon release is hardly unreasonable. However, it is also not unreasonable to construe the phrase to mean after the moment of release or during the time of the alien's release. Given this textual ambiguity, the court's overriding concern is to hew as close to Congressional intent as possible and that means respecting the emphasis which Congress gave to mandatory pre-removal detention for certain categories of criminal aliens.

The case before the court has been the subject of a number of district court decisions. It has not yet been decided by any higher court, although, as will be noted, there are now appeals pending before the Second Circuit. The

issue has also been the subject of a much-cited decision by the BIA, Matter of Rojas, 23 I. & N. Dec. 117 (BIA 2001).

In Rojas, the BIA predicated its decision on the notion that the "mandatory detention aspects of the statute…derive from the language of section 236(c)(2)." 23 I. & N. Dec. at 119. It framed the question before it as "whether or not the phrase 'when the alien is released' is a necessary part of the description of the alien in paragraph (1)" referenced in §236(c)(2). 23 I. & N. Dec. at 120. The Board first held that the language of section 236(c)(2) is "susceptible of different readings." Id. It then declared that the "natural reading" of the text "seems to us most appropriately to be a reference to an alien described by one of four subparagraphs, (A) through (D)," excluding "any or all of the concluding clauses of paragraph (1), namely the clauses directing that a described alien be taken into custody 'when the alien is released….'" Id. As a result, it concluded that the respondent in the case was "subject to mandatory detention pursuant to section 236(c) of the [INA], despite the fact that he was not taken into Service custody immediately upon his release from state custody." Id. at 127.

When asked to interpret the INA, courts must defer to the BIA's reasonable construction of ambiguous terms. See Negusie v. Holder, 555 U.S. 511, 516 (2009). However, Rojas fails to meet the issue presented by the essential "when…released" clause in § 236(c)(1). Instead, the case severs the "when…released" clause from the remainder of Section 236(c). Therefore, although Rojas reaches the same result as this court does in the present case,

this court cannot follow Rojas or accord it deference, because it does not reach the essential issue of statutory interpretation before the court.

Turning now to the district court cases, the majority of courts have held that the "when…released" clause connotes immediacy in accord with petitioner's position regarding the interpretation of § 236(c). See, e.g., Aparicio v. Muller, No. 11-cv-0437 (S.D.N.Y. Apr. 7, 2011) (appeal pending); Jean v. Orsino, No. 11 Civ. 3682 (LTS) (S.D.N.Y. June 30, 2011); Louisaire v. Muller, 758 F. Supp. 2d 229 (S.D.N.Y. 2010); Scarlett v. DHS, 632 F. Supp. 2d 214 (W.D.N.Y. 2009); Beckford v. Aviles, No. 10-2035, 2011 WL 3515933 (D.N.J. Aug. 9, 2011); Sylvain v. Holder, No. 11-3006, 2011 WL 2580506 (D.N.J. June 28, 2011); Khodr v. Adduci, 697 F. Supp. 2d 774 (E.D. Mich. 2010); Bracamontes v. Desanti, No. 2:09cv480, 2010 WL 2942760 (E.D. Va. June 16, 2010); Hosh v. Lucero, No. 1:11-cv-464, 2011 WL 1871222 (E.D. Va. May 16, 2011); Waffi v. Loiselle, 527 F. Supp. 2d 480 (E.D. Va. 2007); Zabadi v. Chertoff, No. C 05-03335, 2005 WL 3157377 (N.D. Cal. Nov. 22, 2005); Quezada-Bucio v. Ridge, 317 F.Supp. 2d 1221 (W.D. Wash. 2004).

But a sizable minority of courts have ruled the other way, either by deferring to Matter of Rojas or by interpreting the "when…released" clause not to require immediacy. See, e.g., Gomez v. Napolitano, No. 11-cv-1350, 2011 WL 2224768 (S.D.N.Y. May 31, 2011) (appeal pending); Sulayao v. Shanahan, No. 09-cv-7347, 2009 WL 3003188 (S.D.N.Y. Sept. 15, 2009); Diaz v. Muller, No. 11-4029, 2011 WL 3422856 (D.N.J. Aug. 4, 2011); Hernandez v. Sabol, No.

1:CV-11-1064, 2011 WL 4949003 (M.D. Pa. Oct. 18, 2011); Garcia Valles v. Rawson, No. 11-C-0811, 2011 WL 4729833 (E.D. Wis. Oct. 7, 2011).

The court in the present case has announced its ruling, as described earlier, which the court believes is necessary in order to carry out as closely as possible the Congressional intent behind § 236(c).

This view finds support in the legislative history of IIRIRA. Congress passed § 236(c) of the IIRIRA out of concern for the tendency of criminal aliens to recidivate after release and abscond before removal. See S. Rep. No. 104-48 (1995), 141 Cong. Rec. S 7803 (daily ed. June 7, 1995) (statement of Sen. Abraham)). Given this problem, it stands to reason that the legislature would create a system of mandatory pre-removal detention that applies to more than those criminal aliens detained within a day or a few days of their release from criminal custody. Furthermore, the House Conference Report for the bill states the "detention mandate [of § 236(c)] applies whenever such an alien is released from imprisonment, regardless of the circumstances of the release." H.R. Rep. No. 104-828, at 211 (1996). The usage of "whenever" strongly connotes that § 1226(c)(1) imposes an obligation on the Attorney General that arises upon the date an enumerated alien is released from criminal custody *and continues thereafter*.

This reading finds further support in Demore v. Kim, the most recent Supreme Court case concerning § 236(c). In that case, the Court upheld § 236(c) against an as-applied constitutional challenge brought by a legal permanent resident facing mandatory pre-removal detention. See 538 U.S. at

531. In doing so, the Court noted that "Congress adopted this provision against a backdrop of wholesale failure by the INS to deal with increasing rates of criminal activity by aliens." Id. at 518. The Court then canvassed the legislative history of the IIRIRA, placing considerable emphasis on "Congress' concern that, even with individualized screening, releasing deportable criminal aliens on bond would lead to an unacceptable rate of flight." Id. at 519. The Court then summarized reports and studies before Congress demonstrating the severity of the problem and concluded that "[i]t was following those Reports that Congress enacted 8 USC § 1226, requiring the Attorney General to detain a subset of deportable criminal aliens pending a determination of their removability." Id. at 521.

Thus, to repeat, this court holds that § 236(c) should not be interpreted to require that a criminal alien be taken immediately into immigration custody following release from criminal custody in order for that alien to be subject to mandatory pre-removal detention.

III)   The Constitutionality of Matter of Joseph Hearings

Guillaume also contends that the administrative procedure for challenging his classification under § 1226(c)(1) before an Immigration Judge violates the United State Constitution by placing the burden on petitioner to prove that the loss of his liberty is unlawful.

The BIA clarified this administrative procedure in Matter of Joseph, 22 I. & N. Dec. at 805-809. As summarized by the Supreme Court, at a Joseph hearing, "the detainee may avoid mandatory detention by demonstrating that

he is not an alien, was not convicted of the predicate crime, or that the INS is otherwise substantially unlikely to establish that he is in fact subject to mandatory detention." See, Demore, 538 U.S. at 514 n.3. However, much like the petitioner in Demore, Guillaume sought no Joseph hearing, and so there is "no occasion to review the adequacy of Joseph hearings generally in screening out those who are improperly detained pursuant to 8 U.S.C. § 1226(c)." Id. Accordingly, Guillaume's constitutional claim is unripe.

## Conclusion

For the foregoing reasons, the petition for writ of habeas corpus is denied.

Dated:  New York, New York
        February 7, 2012

_____
Thomas P. Griesa
U.S.D.J.

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/7/12
```

- 13 -